HAYNES, J.
(orally).
Plaintiff in error brings this suit to reverse the judgment of the court of common pleas. There is also filed a cross-petition on behalf of certain defendants, who have in their petition in error set up as grounds of error, mainly the disposition that was made by the court of common pleas oí the costs in the case.
The original action was commenced in the probate court of Lucas county, and was brought by Gashe, as assignee of the Ohio Lumber and Manufacturing Company, against sundry parties for the purpose of selling real estate which belonged to the Ohio-Lumber and Manufacturing Company, which company had become insolvent, and of which he had in due form been appointed the assignee. Such proceedings were bad there that a decree was. rendered by that court, from which the Loan Company took an appeal to the court of common pleas. The case came on for trial in that court, and was heard, and a decree was rendered, in which, in substance, it was ordered that certain persons holding mechanics’ liens upon the property should be first paid out of the proceeds of the sale, afterwards certain amounts due the Loan Company, and certain costs were ordered to be apportioned among the persons holding the mechanics’ liens.
The leading points that are really assigned for error are by the-Loan Company: that the court erred in that it did not give to the-Loan Company the benefit of a certain amount of money that had been paid by it upon a mortgage which had been used by the Manufacturing Company in payment of the balance due upon the real estate, which had been purchased of a party by the name of Ransom, and which amount was about 82,600. Secondly, they claim that the court allowed the mechanics to have liens for certain-property which was not the subject of mechanics’ liens, and which amounts were not properly a lien upon the property.
The leading facts in the case are these: The Ohio Manufacturing company purchased of Ransom in February, 1893, certain real estate, and agreed to pay a certain sum of money, and paid down upon the same $700, and was to pay the balance in installments, and when the balance was fully paid, Ransom was to make a deed. The Manufacturing Company immediately took 'possession of that property, and proceeded to erect upon it a planing mill, and in doing so they made purchases of materials from on© and another, an engine and boiler from one of the defendants, and so on — until about the 27th of May, at which time the building-was nearly completed, and the various articles that had been furnished by the mechanics’ lien men had all been furnished by-them, and were in the building at that time. At that time the Manufacturing Company desired to borrow of the Loan Company a certain amount of money. In order to facilitate the making of the loan, a deed was made by Ransom to a man by the name of Payne, the secretary of the company, and really by mutual arrangement between the parties, and the title was thus taken by Payne for the benefit of the Manufacturing Company,for the reason that it was thought that possibly the Manufacturing Company could not become a stockholder or member of the Loan Company, as it would be required to be by virtue of its application for a loan. Thereupon the Loan Company agreed to and did advance to the Manufacturing Company somewhere in the neighborhood of $5,000 upon its mortgage, which was made at that time, and was duly recorded. Out of those moneys the balance of the purchase *683 money to Ransom was paid, being, as I have stated, about $2,600. Thereupon, and after that time, the persons who had made advances, Bled their mechanics’ liens upon the property. I would say this, that Arbuckle & Ryan, who had furnished the boiler and engine, it seems, at the time the mortgage was made, had agreed to waive any mechanics’ lien they had on the real estate, but regained a mechanics’ lien npon the boiler and engine, and they filed only as to the boiler and engine. About that time, or soon after, the Manufacturing Company failed and made this assignment, and then the questions commenced to arise in regard to the respective rights of the parties.
The articles set forth in these liens as T have already stated, antedated the mortgage of the Loan Company; and so far as tiny did not antedate it, they formed a part of a continuous act or account that was entered into between the Manufacturing Company and those respective parties to furnish these articles for the erection of this mill.
The contention of the Loan Company is, that in some form they should be entitled to tnat §2,600 that was paid by the Manufacturing Company to Ransom, the balance of the unpaid purchase money upon the real estate. They claim that the only interest the Manufacturing Company had in these premises at the time this mortgage was given was S700, which had already been paid to Ransom at that time, It is practically conceded here by the Loan Company that the vendor’s lien of Ransom ceased and determined by the payment. Nor do they really claim that they have a right of subrogation under any principles of subrogation that are recognized by courts of equity. Nevertheless, they claim that the $2,600 that went into that lot was really paid by them; that the only interest the Manufacturing Company had was§700; and that the liens of the mechanics should, under the statute, be confined to that $700; and that the $2,600 she uld be for the benefit of the Loan Company. The question is, whether that doctrine is tenable or not.
The revision of the mechanics’ lien law made in 1594 was made subsequent to these proceedings, and has no application to them. The case is to be decided upon the mechanics’ lien laws as they stood prior to 1894.
In the case of Choteau, Merle & Sanford v. Thompson et al., 2 Ohio St., 114, decided in December, 1853, under the mechanics’ lien law, this mle was laid down in regard to mortgages; and, so far as I know, it has stood as the ruling decision in the state of Ohio from that time until the present. I will read from the ninth paragraph of the decision:
“It is next to be considered what distribution is to be made where there is an intervening incumbrance that is inferior to some of the liens, but superior to the rest, thus: If A. B. commence work, or the furnishing of materials, and afterwards the owner mortgages the premises to C., and after this D. and E. begin to work or to furnish materials, here A. and B. have priority over C.,and C. has priority over D. and E; yet, if C. were out of the way, there would be no priority among the others. In such a case A. and B. must receive what they would be entitled to if O.’s mortgage had no existence, the residue must be applied to the satisfaction of the mortgage; and, whatever may remain after that, must be distributed to D. and E, pro rata.”
It will be seen that in a case of that kind the intervening mort *684 gage of C. would eat up the proceeds of all the materials or work that had been put in the building by the subsequent mechanics filing liens, Bo, too, under that decision, and under the rule of law as it has been, if mortgages were existing upon that property at the time the mechanic began to furnish his material and to do his work, those materials and that work might all be taken from him by the prior mortgages. We see no reason why the rule of law that is laid down here is not applicable to this case; we see no way of avoiding that conclusion. The money that was paid at that time paid the vendor’s lieD; it paid the balance due; and the Manufacturing Company became the owner of that real estate. That ownership inures to the benefit of these mechanics’ lienholders. It may be, as a matter of fact, that it operates as a wrong to the Loan Company who furnished this money; but if there were any subsequent mechanics’ lienholders upon this property, the Loan Company, by virtue of this mortgage, might eat up all the moneys they had put in the building in the way of materials or labor. It is one of the incidents of the lien law. It is the nearest approximation that the legislature has been able to make or the courts have been able to make, to the administration of equity in this class of cases. It should be remembered that at the time this mortgage was taken by the company, that this building was erected, and these mechanics had advanced substantially all the material that was advanced; that in one instance the Loan Company seems to have required that there should be a waiver of the lien on behalf of one of the persons furnishing material, to wit: The persons who furnished the engine and the boilers; and that company waived its right to a lien upon the land. So that, so far as that point is concerned, we are brought to the conclusion that the court of common pleas did not err in holding that certain of these lienholders, mechanics or material men, Were prior to the lien of the Loan Company, and that their claims were prior to the lien of the Loan Company’s mortgage.
It is claimed here secondly, however, by the Loan Company, that the materials that were furnished by certain of these parties were not properly the subject of a mechanics’ lien upon the property; that they aid not in any manner or form become a part of the structure, and they did not go to the betterment of the property; that they were in fact merely personal property placed in the mill; that there could be no mechanics’ lien therefor; and therefore the court erred in allowing a lien for those sums. We have had occasion several times to examine these questions. The case in 45 Ohio St., although decided from the eighth circuit, affirms a decision made in Medina county by this court as first constituted. The question has also recently been made in this county: That is to say, it was decided by this court some three or four years ago in a case that arose in the foreclosure of mortgages upon the cotton mill at Maumee. In that case the Pawtucket Savings Institution of Rhode Island, was making questions similar to the questions that are made here by the Loan Company. We made a decision in that case against the Pawtucket Savings Institution, and it took the case to the supreme court, and the judgment of the circuit court was affirme'd by the supreme court. We have no question now but that the belting, shafting, and materials that were put into this building under the arrangement between Tobey, I think it is, and Shaw-Kendall Company were properly subjects of a mechanics’ lien,and the accounts that were *685 due to them were proper liens upon this property, prior in point of'time to the lien of the Loan Company.
O. S. Brumback, Attorney for Plaintiff in Error.
Harris & Thurston and King & Tracy, Attorneys for Defendants in Error.
“ In regard to the costs in the case: it will be observed that this case was appealed from the probate court to the court of common pleas. It stood in that court the same as if it had been commenced in that court; and, indeed, under the provisions of the statute with regard to selling p operty in cases of insolvency, the assignee might have commenced a suit in that court, had he seen fit to do so. But having commenced it in the probate court, it comes into the court of common pleas and proceeds the same as if it had jurisdiction of the case. By virtue of section 6351, I think it is, it is claimed that these costs should be tirst paid out of the fund that arises from the sale of the property. We are unable to come to that conclusion. Indeed, I do not see anything said about costs in that section of the statute. Reference was made here by one of the counsel to a ease in 42 Ohio St., where a ruling was made by the supreme court with regard to costs, that had arisen under section 6165, in a case of an administrator’s sale of real estate, in the probate court; but section 6165 makes express provision in regard to costs, and the supreme court in reversing the action of the probate court,gave effect to that statute,and followed it, as being a rule imperative in that case. But we see no reason why section 5351 may not apply in this case, where the court of common pleas had authority, under that statute, to dispose of the costs in the case in such .a manner as it should deem equitable. It did, in fact, order that the costs that were made in the probate court should be paid out of the fund, except certain attorney’s fees and certain fees to the stenographer in that court. As the costs that were made in the court of common pleas upon the appeal, were made upon an appeal taken by the Loan Company, it odered that the costs should be paid by the loan association. We are unable to see why that is not just and equitable. Indeed, we should not review the action of the court of common pleas in that respect, unless it was clearly apparent and manifest from the facts of the case that there had been a clear abuse of the judicial discretion that was vested in that court in that class of cases.
With these views of the case, the judgment of the court of common pleas will be affirmed.